IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA     :
                             :
v.                           :   Criminal Case No. DKC 92-0208
                             :
PAUL GEORGE KRATSAS          :
                             :

**MEMORANDUM OPINION**

Paul George Kratsas is serving a life sentence imposed in 1993 for conspiracy to distribute and possess with intent to distribute five or more kilograms of cocaine. The life sentence was mandatory for that conviction pursuant to 21 U.S.C. § 841(b) due to the quantity involved and his two prior felony drug convictions.

Currently pending are (1) a motion to correct the judgment and commitment order (ECF No. 121), (2) a motion to vacate pursuant to 28 U.S.C. § 2255 (ECF No. 122), and (3) a motion for compassionate release (ECF No. 123).[1] For the following reasons, the first two motions will be denied, but the third will be granted.

---

[1] The Government has filed the presentence report, with a request that it be placed under seal as a confidential court document. (ECF Nos. 131 and 132). The motion to seal will be granted. The report contains personal information throughout.

**A.   Motion to Correct Judgment**

This is the second motion to correct judgment that Mr. Kratsas has filed. This one seeks, not to correct a mistake, but to add information where the judgment is silent. He asserts that the judgment lacks the specific subchapter of the statute under which he was convicted and omits the date of offense. The judgment refers to 21 U.S.C. § 846 and 18 U.S.C. § 1956(a)(1)(B)(i) and is blank in the column for "Date Offense Concluded." (ECF No. 111-1). Mr. Kratsas does not indicate why, particularly after all these years, he seeks these changes. Nor does he indicate precisely what he thinks the additions should be. While the United States Code contains "Subchapters," citation to the Title and Section suffices to identify the statute. The drug conspiracy statute, 21 U.S.C. § 846, does not contain any subchapter, or even subsections. He may mean to request addition of the specific code section that he conspired to violate, namely 21 U.S.C. § 841(a)(1), or pursuant to which he was sentenced, 21 U.S.C. § 841(b)(1)(A). The current entry in the Nature of Offense section is Conspiracy to distribute and possess with intent to distribute a mixture containing Cocaine, a Sch. II NCS. The presentence report states in the first paragraph that the date of the conspiracy was from in or about 1989 up to and including about May 7, 1992, and for the money laundering, on or about April 25, 1992. (ECF No. 132).

Fed.R.Crim.P. 32 (k)(1) sets forth the requirements for the contents of a judgment: "[T]he court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. . . . The judge must sign the judgment and the clerk must enter it." The rule does not specify that the code section must be delineated in any specific way and does not mention the date of the offense. The form judgment order does contain a space for the date of an offense, or its conclusion. There is ample authority that an error in that date can be corrected under Rule 36. *See, e.g., Hagins v. United States*, 267 F.3d 1202, 1207 (11th Cir. 2001); *Cherry v. United States*, 489 F.Supp.2d 372, 373-74 (S.D.N.Y. 2007). There are also times when it is necessary to determine when a prior offense took place and the judgment can be a useful source of information. *See, e.g., United States v. Span*, 789 F.3d 320, 325 (4th Cir. 2015). Inclusion of the full statute of conviction, likewise, is conventional, albeit not always necessary. In *United States v. Washington*, 506 Fed.Appx. 102, 104 (3d Cir. 2012), the appellate court found that it was not an abuse of discretion for the trial court to deny a motion to correct when the judgment omitted the statutory subsection of the offense.

As noted above, Mr. Kratsas does not indicate either what "subchapter" was erroneously omitted or what date of offense he believes would be correct. Under the circumstances, there is no compelling reason to amend or correct the judgment, and the motion is denied.

B.   **Motion to Vacate Mandatory Life Sentence and/or § 851 Prior Felony Enhancement**

In this motion, Mr. Kratsas requests relief pursuant to the "Hollaway Doctrine" which, he claims, demonstrates "the power given to courts and prosecutors to exercise their discretion to agree to reductions of overly punitive mandatory sentences." (ECF No. 122.)  In *United States v. Holloway*, 68 F.Supp. 3d 310 (E.D.N.Y. 2014), Judge John Gleeson granted a motion to reopen Mr. Holloway's § 2255 proceeding after the United States agreed, at the court's invitation, to an order vacating two of his three convictions under 18 U.S.C. § 924(c), requiring imposition of consecutive 20 year sentences.  The court was then able to resentence Mr. Holloway on the remaining convictions.

When Mr. Kratsas filed this motion, it was docketed as a new Motion to Vacate pursuant to 28 U.S.C. § 2255 because it appeared to be an attack on his conviction and sentence.  A new civil case was opened as a result.  On closer evaluation, however, it should have been construed as a motion to reopen the earlier § 2255 pursuant to Fed.R.Civ.P. 60, as occurred in *Holloway*.

The Government opposes this motion, arguing, first, that it is an impermissible second or subsequent motion to vacate pursuant to 28 U.S.C. § 2255; second, that the Fourth Circuit has not endorsed the approach in *Holloway*, and, third, that Mr. Kratsas is not deserving of leniency.  This motion must be denied, inasmuch as the Government declines to join in the relief requested.

4

Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order.  *United States v. Hadden,* 475 F.3d 652, 659 (4th Cir. 2007).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell,* 537 U.S. 322, 336–38 (2003).  Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quotation marks omitted).  Mr. Kratsas does not satisfy this standard and a certificate will not issue.

C.   **Motion for Compassionate Release**

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed[.]"  18 U.S.C. § 3582(c) (2018).  This general rule is subject to certain exceptions, including the compassionate release provision, which allows the BOP to seek a modification of a prisoner's sentence.  *See id*. § 3582(c)(1)(A).  Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court.  The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

>     3559(c), for the offense or offenses for which
>     the defendant is currently imprisoned, and a
>     determination has been made by the Director of
>     the Bureau of Prisons that the defendant is
>     not a danger to the safety of any other person
>     or the community, as provided under section
>     3142(g);
>
>     and that such a reduction is consistent with
>     applicable policy statements issued by the
>     Sentencing Commission[.]

On December 2, 2020, the United States Court of Appeals for the Fourth Circuit ruled, in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), that a district court is empowered, under 18 U.S.C. § 3582(c)(1)(A), to consider any extraordinary and compelling reason that a defendant might raise, and specifically that district courts did not err in considering that mandatory consecutive stacked sentences for violations of 18 U.S.C. § 924(c), that would not be imposed under current law, resulted in sentences that exceeded those necessary to achieve the ends of justice.

Mr. Kratsas, similarly, asserts that the disparity between the sentence he received and the sentence that would be imposed today justifies consideration for compassionate release. He adds that he has "displayed exemplary behavior despite the lack of hope that often accompanies the prospect of a lifetime behind bars." (ECF No. 123, at 2-3). He proudly emphasizes that he earned a transfer to a low-security facility based in part on his completion of the 18-month residential Life Connections Program. In addition, Mr. Kratsas argues that he has a strong support system offering housing and employment, that there is disparity between him and

other offenders who have received clemency or other sentencing reductions, and that his offense, while serious, was non-violent.

The Government opposes compassionate release, arguing that there is no basis for relief, any relief for "other reasons" requires the support of the BOP, there are neither extraordinary nor compelling reasons for relief, and that he hasn't shown lack of dangerousness. (See generally ECF No. 130). It does not dispute the assertion that his prior drug convictions would not today qualify for sentence enhancements under § 841. Instead, it points out that Congress did not make those changes retroactive. As to danger, the Government emphasizes the nature of the offense and what it calls a "significant" criminal history and asserts that his commendable record in prison does not offset his record before his arrest in this case.

Because of the age of this case and the COVID-19 public health emergency, not all of the trial record is currently accessible. From the available record, the following aspects of the underlying criminal conduct appear. The sentencing judge found at sentencing that Christine Reinhardt, Debbie Kiser, and Raymond Milligan sold cocaine on behalf of Mr. Kratsas and helped him to hide the proceeds. He also found that at least 18 kilograms of cocaine were directly attributable to him, consisting of 14 kilograms supplied by George Bonnett between February 1990 and March 1991, and four kilograms that Christine Reinhardt said he brought back from Florida in June or July of 1990. Furthermore, Mr. Kratsas

8

was found to possess a dangerous weapon (a 9 millimeter semi-automatic firearm seized on May 7, 1992 during execution of a search warrant) during the course of the conspiracy. The offense level was 38 (34+2+2).

His criminal history, recited in the presentence report and restated by the court, included assault with intent to murder (8 years imprisonment); possession with intent to distribute cocaine (5 year suspended sentence, 5 years' probation); and conspiracy to distribute cocaine (10 year suspended sentence, 5-years' probation). The 7 points put him in criminal history category IV, but he was deemed a career offender and thus in criminal history VI. The guideline range was 360 months to life, but he was subject to the mandatory life sentence as noted above.

Today, Mr. Kratsas would still be subject to a possible life sentence, with a mandatory minimum of twenty-five years if his prior drug convictions qualify as "serious."[2]  His case differs from those with stacked § 924(c) sentences inasmuch as his life sentence **could** still be imposed.  Importantly, however, the sentencing judge (not the undersigned) lamented his duty to impose the mandatory life sentence and stated that, if sentencing pursuant to the then mandatory Guidelines, which were 360 months to life, he would impose a sentence of 360 months and not life.

---

[2] He would still be considered a career offender, and even though the quantity guidelines have been reduced two levels, his offense level would be 37, with a criminal history of VI, and guidelines of 360 months to life.

9

One of the original prosecutors, now in private practice, supports the request for immediate release. (ECF No. 140). Without minimizing the offense conduct, he points out the comment of the sentencing judge that the mandatory life sentence was too high and that he would impose the low end of the then mandatory guidelines if permitted, and states that the highest mandatory minimum for this conduct would be 25 years and that the changes to qualifying predicate convictions likely mean that he would face at most a 15 year mandatory minimum today.

Pursuant to *McCoy*, Mr. Kratsas and the then mandatory life sentence imposed presents grounds for compassionate release consideration. Furthermore, consideration of his current dangerousness and the § 3553(a) factors support granting release.

Mr. Kratsas has spent nearly three decades in prison for a non-violent drug offense (although he possessed a firearm) for which the sentence today likely would be less, perhaps much less. A defendant today would certainly not face a mandatory life sentence. No one does for a drug offense. The two prior drug convictions on his record resulted in suspended sentences and would not qualify as predicate serious drug convictions for statutory enhancements. The assault with intent to murder could qualify as a prior crime of violence. Thus, he would face a 15 year mandatory minimum if the Government filed a notice under § 851. His now advisory guidelines, as a career offender, would still be quite

high, but with good time credits, he has already served more than the bottom of those guidelines.

Few defendants, left to their own devices, present as well-reasoned, comprehensive, and compelling motions as those filed by Mr. Kratsas over the years. Undeterred by his lack of success, Mr. Kratsas persevered and his latest motion will be granted. It is time to recognize that both the law and Mr. Kratsas have changed over the last three decades. His youthful refusal to acknowledge his guilt-or to accept punishment-has given way to reflective maturity. His positive attitude while in prison is demonstrated by the myriad courses, programs, and activities he has completed successfully, earning him transfer to a low security facility and the support of his mentor and family. He has demonstrated that he is not likely to be a danger to society due to his insights into his personal responsibility and the release plan he has offered. He is to be commended for his refusal to lose hope. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge